<sub>LAW OFFICES</sub>
# McGLINCHEY STAFFORD
<sub>A PROFESSIONAL LIMITED LIABILITY COMPANY</sub>

FILED
DIST. COURT
DIST. OF LA.

NEW ORLEANS
DALLAS
HOUSTON
JACKSON
LAKE PROVIDENCE
MONROE

NINTH FLOOR, ONE AMERICAN PLACE
BATON ROUGE, LA 70825
http://www.mcglinchey.com

TELEPHONE (504) 383-9000
FAX (504) 343-3076
DIRECT DIAL:

October 19, 1998

'98 OCT 27 PM 3: 28
RICHARD J. MARTIN
CLERK

**RECEIVED**
OCT 20 1998
FRANK J. POLOZOLA
U.S. DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

The Honorable Frank J. Polozola, Judge
Middle District of Louisiana
707 Florida Street
Baton Rouge, Louisiana 70801

**HAND DELIVERED**

> Re:    LSP Mental Health Issues
>        Hayes Williams I, Docket No. 71-98
>        Hayes Williams II., Docket No. 92-1

Dear Judge Polozola:

During the October 13, 1998 status conference, you directed the State of Louisiana to identify actions it has taken to address issues identified in Dr. Howard Osofsky's initial report dated August 28, 1998. The August 28 letter incorporates background information, a description of the investigation conducted by Drs. Osofsky and Greenleaf, an overview of LSP's mental health programs, and some general recommendations. As you noted during the status conference, the "Recommendation Summary" at the conclusion of Dr. Osofsky's letter does not mention all of the areas of concern that he "flagged" in the body of the report. The Court directed the State to comment on each of the areas of concern identified by Dr. Osofsky in the August 28 letter - not only the recommendations in his conclusion.

Dr. Osofsky's comments regarding mental health services at LSP fall into several broad categories. His concerns about any particular area, however, are interspersed throughout his report. This letter will respond to what I perceive to be three major areas of concern, followed by several miscellaneous issues.

## 1.    Transfers of Inmates Requiring Acute Psychiatric Care to and from Hunt Correctional Center

Dr. Osofsky expressed concern regarding potential delays in transferring to Hunt Correctional Center inmates having an acute psychiatric crisis. He also identified a need for better professional communication when inmates are transferred between LSP and HCC. Following are some of his comments:



# M<sup>c</sup>GLINCHEY STAFFORD

### LAW OFFICES
#### A PROFESSIONAL LIMITED LIABILITY COMPANY

The Honorable Frank J. Polozola, Judge
October 19, 1998
Page No. 2

Page 3 (Mental Health Programs)

"[I]nmates need to have reasonable access to the type of treatment that the acuity of their illness warrants.  They should be able to receive acute care in a timely manner."

Page 4 (Acute Psychiatric Care):

"[A]cute care should be readily available to the inmates having an acute psychiatric crisis - preferably within 24 hours (the commonly applied community standard) - the current practice of inmates waiting for up to ten days before transfer to HCC can be accomplished is unacceptable."

"When inmates are returned from HCC, transitional care should be accomplished in accordance with a negotiated protocol which includes contact between treating clinicians and clinicians receiving the patient."

Page 6 (Recommendation Summary)

"There is a need to establish a better agreement for acceptable, timely transfers to HCC when this is advisable.  The current once-a-week transfer policy is unacceptable and does not meet the needs of the inmates.  There also needs to be a better established policy of professional communication related to transfer and follow up in both directions."

**ACTIONS TAKEN IN RESPONSE BY LOUISIANA STATE PENITENTIARY:**

On September 3, 1998, Warden Cain, Warden Lensing and Secretary Stalder met to discuss Dr. Osofsky's August 28, 1998 report.  Concerns over any delays in transferring an inmate having an acute psychiatric crisis were resolved.  These inmates are now immediately transferred to Hunt Correctional Center.  See, e.g., Exhibit No. 1. (That exhibit reflects that on September 9, 1998 - not a routine transfer day - LSP directed the immediate transfer of two mental health patients to HCC.) Inmates in need of acute care will remain at Hunt Correctional Center until such time as they are stabilized and are released into general population.

During the September 3, 1998 meeting, the LSP and HCC wardens committed to assure better communication between the mental health staffs at Hunt Correctional Center and Louisiana State Penitentiary.  They also agreed to arrange meetings between the medical staff at Tulane Medical School

I:\Corel8\DPSC.4129\0002\Polozola.006.wpd

# McGLINCHEY STAFFORD
LAW OFFICES
A PROFESSIONAL LIMITED LIABILITY COMPANY

The Honorable Frank J. Polozola, Judge
October 19, 1998
Page No. 3

and LSU Medical School in New Orleans to provide a system of checks and balances to insure that quality mental health services are being provided at LSP and HCC and to develop protocols for communication between the two facilities. Exhibit 2 includes, in globo, a memorandum and letters regarding some of these contacts.

Drs. Osofsky and Greenleaf met with Dr. Soong in New Orleans on October 2, 1998 to begin discussing a negotiated protocol for contacts between clinicians at HCC and clinicians at LSP. A further meeting is being scheduled for these doctors at HCC. After the meeting at HCC, Dr. Soong will participate in a site visit at LSP. It is anticipated that a protocol will be developed and implemented after these site visits.

## 2.   Transitional and Extended Stay ("Protective Care") Mental Health Programs

Dr. Osofsky found that both the transitional and extended stay programs "have a good beginning at LSP but could be further developed." His principal concern in this area is the need for adequate staff to further develop these programs.

Page 1 (Background)

"[Consolidation of acute psychiatric services at Hunt Correctional Center] has lead to decreased quality of services with inefficiencies, a 'skeletonized' staff trying to compensate and at times heroically provide services, and with inadequate facilities and staff to provide needed programs for LSP with its size and with its maximum security mission."

Page 3 (Mental Health Programs)

"It is very important that LSP have transitional programs (commonly referred to as 'step down' programs) following acute care at HCC and extended care programs for full stabilization and as a sheltered environment when returning to the dorm setting is not immediately feasible due to their mental illness."

Page 4 (Transition Program)

"[T]he inmates returning to LSP after psychiatric stabilization need an intermediate care program which we are labeling a 'Transition Program.' . . . The security officers assigned to the program should be trained in mental health

M<sup>c</sup>GLINCHEY STAFFORD
LAW OFFICES
A PROFESSIONAL LIMITED LIABILITY COMPANY

The Honorable Frank J. Polozola, Judge
October 19, 1998
Page No. 4

skills equivalent to those skills required by a psychiatric aide and perform those duties in additional to their primary duties as security officers."

Page 6 (Recommendation Summary)

"The transition and extended care programs at LSP need some additional development."

**ACTIONS TAKEN IN RESPONSE BY LOUISIANA STATE PENITENTIARY:**

Dr. Osofsky has recommended four additional mental health positions for fiscal year 1999-2000 (two clinical social workers, one registered nurse, and one psychologist). LSP adopted these recommendations in the budget request it submitted in September. A copy of the budget request is attached as Exhibit 3 (item 2). The Department of Public Safety & Corrections is committed to supporting this request in its departmental budget request. LSP requested a temporary job appointment (until the next fiscal year begins) for two CSW positions as early as August 27, 1998. See Exhibit 4.

Although the elements of transitional and extended care programs exist at LSP, Warden Cain has directed Warden Peabody to formally develop a transitional program and a protective care program - with support from Warden McFatter, Warden Renatza and Clay Williams. Drs. Osofsky and Greenleaf will be closely involved in developing those programs. Exhibit 5.

Attached to the October 15 memorandum (Exhibit 5) is a list of security officers who formerly worked at CSU. These officers have training and experience in dealing with inmates with mental health concerns. These officers would be utilized in the transitional and protective care programs now being developed.

3.    **On-going Monitoring**

On pages 5-6 of his August 28 report, Dr. Osofsky describes the principal elements that should be subject to on-going monitoring: forced medication, transfer procedure and mental health program effectiveness.

**ACTIONS TAKEN IN RESPONSE BY LOUISIANA STATE PENITENTIARY:**

As part of its contractual arrangement with the LSU Medical School, Drs. Osofsky and Greenleaf will provide ongoing monitoring of the LSP mental health program as described in Dr. Osofsky's August 28, 1998 letter. LSP has requested continuation of the LSU Medical School contract

I:\Corel8\DPSC.4129\0002\Polozola.006.wpd

M<sup>c</sup>GLINCHEY STAFFORD
LAW OFFICES
A PROFESSIONAL LIMITED LIABILITY COMPANY

The Honorable Frank J. Polozola, Judge
October 19, 1998
Page No. 5

for fiscal year 1999-2000 and the Department of Public Safety & Corrections is committed to supporting that request in its departmental budget request.

4.    **Miscellaneous Issues**

Dr. Osofsky also identifies several other discrete issues involving mental health services at LSP: (a) automation of mental health records, (b) outpatient mental health services, and (c) forced medication procedures.

a.    **Automation**
Page 3 (Areas Assessed)

"There are subsystems [of the automated system for medical information] which have not been implemented and there is a need for additional management level statistical reports."

ACTIONS TAKEN IN RESPONSE BY LOUISIANA STATE PENITENTIARY:

Warden Renatza and Clay Williams met with Dr. Osofsky to discuss enhanced automated needs in the delivery of mental health services. Dr. Greenleaf also has agreed to assist in further development of the mental health component of the medical automation system. Development will include data elements that will provide for statistical reporting. See Exhibit 6.

b.    **Outpatient Clinics**
Page 3 (Mental Health Programs)

"Outpatient programs of mental health clinics in the general population are being provided but need some expansion. The treatment in the clinics should at least meet the community standard of care for frequency of follow up evaluations, lab tests, side-effect monitoring and renewal of their medications, if inmates are stable."

ACTIONS TAKEN IN RESPONSE BY LOUISIANA STATE PENITENTIARY:

Mental health clinics were constructed in June and July, 1998 at Camps C, D, J, and RC as well as the Main Prison East and West Yards. Computers now have been installed in each of the clinics with connectivity to the server at the R.E. Barrow, Jr. Treatment Center. This access to computers gives mental health staff immediate access to the automation system and allows social workers rapid and easy access to clients. Also, the additional mental health positions for the transitional and protective care programs (Exhibit 3) may enhance services available at outpatient clinics.

### LAW OFFICES
## McGLINCHEY STAFFORD
#### A PROFESSIONAL LIMITED LIABILITY COMPANY

The Honorable Frank J. Polozola, Judge
October 19, 1998
Page No. 6

    **c.**    **Forced Medication**
        Page 5 (On-going Monitoring - Forced Medication)

        "As we currently understand the practice utilized when an inmate refuses medications, there are some improvements which may be appropriate to strengthen your policy."

**ACTIONS TAKEN IN RESPONSE BY LOUISIANA STATE PENITENTIARY:**

    During a meeting at LSP on October 15, 1998, Dr. Greenleaf indicated that he will work with LSP staff to develop formal policies and procedures regarding forced medication.

    I hope that this letter addresses all of the concerns identified by Dr. Osofsky. I have not attempted to include in this letter other improvements in mental health delivery at LSP in the last several months that are disrelated to the concerns identified by Dr. Osofsky.

    As we represented during the status conference, Drs. Osofsky and Greenleaf are preparing a further report of their findings and recommendations for mental health services delivery at LSP. That report also will review suicide gestures and attempts at LSP during October. Osofsky and Greenleaf expect to submit that report before mid-November.

        Very truly yours,

        **McGLINCHEY STAFFORD**
        **A Professional Limited Liability Company**

        Richard A. Curry

RAC\prb
enclosures
cc:    Keith Nordyke, hand delivered
       John Whitley, hand delivered
       Bill Maddox, via Federal Express

$B$

DATE: 09/09/98            DPS&C CORRECTIONS SERVICES
TIME: 14:36    INTER-INSTITUTIONAL TRANSFERS EFFECTIVE  09/09/1998

INSTITUTION TRANSFERS FROM LA STATE PEN

| NAME | | R/S | DOC NUM | TO | NOTES |
|------|------|-----|---------|-----|-------|
| SANDERS | ALEX | B/M | 106353 | HCC/ | LSP WD/MH RE-EVAL. |
| ESTELLE | WILLIAM | W/M | 382443 | HCC/ | MH REV. |

*mPEut*

*J Gar*

| xc:Cain | Peabody | McFatter | Ranatza | Vannoy | McNeal | Tillery |
|---------|---------|----------|---------|--------|--------|---------|
| Johnson | Cntrl Center | Inc Pay | Inmate Accts | Canteen | Med Records | Med Dir. |
| TC Security | A Bldg. | Chaplains | MPO | RC | Trip Superv | Mal Room |
| Class. | Library | ID | | | | |

EXHIBIT

1

From:      C. M. LENSING on 09/04/98 07:59 AM

Sent by:  ANGELA WHITTAKER

To:        Richard Stalder/CORRECTIONS@CORRECTIONS, BURL CAIN/LSP/CORRECTIONS@CORRECTIONS
cc:
Subject:  Meeting with Dr. Osofsky

Per our previous conversations/correspondence, Dr. Soong attempted to set up a meeting with Dr. Osofsky.  Dr. Osofsky advised he has a back injury and won't be available to September 23.

I am submitting this for your information, as I know it was your plan to have them meet before this time.

**EXHIBIT**

2



# Tulane University Medical Center

SCHOOL OF MEDICINE
Department of Psychiatry and Neurology
Tidewater Bldg., TB53
1440 Canal Street
New Orleans, Louisiana 70112-2715
(504) 588-2201  (504) 587-7457 Fax

FORENSIC NEUROPSYCHIATRY
John W. Thompson, Jr., M.D.
*Director*

September 7, 1998

Warden C. M. Lensing
Elayn Hunt Correctional Center
St. Gabriel, LA 70776

Dear Warden Lensing,

On August 27, 1998, Assistant Warden Desporte asked me to review and comment on a August 14, 1998, correspondence from Howard Osofsky, MD to Warden Burl Cain. I also spoke with you on September 3, 1998 concerning another correspondence dated August 28, 1998.

The letters made several references to the mental health service provided by EHCC. In regards to the mental health services at EHCC, National Guidelines and Standards for correctional health care programs have been published by national organizations such as the American Bar Association (1985), the American Nurses Association (1985), American Public Health Association (1986), American Psychiatric Association (1989), American Correctional Association (1990), National Institute of Corrections (1991), and National Commission on Correctional Health Care (1996, 1997). These guidelines and standards provide a useful framework for establishing mental health services that adequately address the issue of adequate access to treatment. A comprehensive system includes the following components:

1. Crisis Intervention Program
   (EHCC equivalent: HSU Cellblock Evaluation Tier)
2. Acute Care Program
   (EHCC equivalent: HSU Cellblock for acute care)
3. Chronic Care / Special Needs Unit
   (EHCC equivalent: HSU Dorm for intermediate care)
4. Outpatient Treatment Services
   (EHCC equivalent: general population psychiatric services)
5. Consultation Services
   (EHCC equivalent: consultation with medical and administration)
6. Discharge / Transfer Planning
   (EHCC equivalent: done per mental health services at the time of discharge or transfer)

In addition, ARDC uses mental health screenings to identify inmates with mental illness for appropriate disposition.

Page 2
September 7, 1998

The effectiveness of a correctional mental health system is closely related to staffing procedures. Treatment is provided by the multi-disciplinary treatment team approach which includes psychiatry, medical, psychology, administration, security, nursing and social services. This approach provides comprehensive assessment, diagnosis and treatment of all mentally ill inmates.

In regards to the administrative questions concerning the length of transfer time from LSP to EHCC, I defer to Assistant Warden Desporte but have a few comments. Dr. Osofsky's letter refers to a once-a-week transfer policy and a 10-day waiting period for transfer as unacceptable. It also states that the commonly applied community standard of acute care availability is 24 hours. In my discussion with Assistant Warden Desporte he relays that the once-a-week policy and 10-day wait are erroneous information. I am also aware that immediate (<24 hours) emergency transfers are available with approval of the Warden's Office.

I believe, EHCC provides excellent mental health services above community standards for the treatment and stabilization of mentally ill inmates. As far as what type of psychiatric services are indicated at LSP, I will defer to Warden Cain and Dr. Osofsky.

We have a cohesive and effective treatment team with extensive professional qualifications. I look forward to continuing to work with you and your staff.

Sincerely,

Dr. Herman Soong, MD

HS:da

cc: Asst. Warden Desporte
    File



# Elayn Hunt Correctional Center
*A.C.A. Accredited Facility*

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

**C. M. Lensing**
*Warden*

**M.J. "Mike" Foster, Jr.**
*Governor*

**Richard Stalder**
*Secretary*

**TO:**    *Richard Stalder, Secretary*

**FROM:**    *C.M. Lensing, Warden*

**DATE:**    *October 9, 1998*

**RE:**    *Mental Health Services*

*Per our recent meeting concerning the delivery of Mental Health Services by the Department, especially how they pertain to LSP, ARDC, and the Hunt Special Units at this facility, please find attached correspondence from Dr. Herman Soong, from the Forensic Neuropsychiatry Department at Tulane University.*

*I requested that Dr. Soong respond to me concerning Dr. Osofsky's correspondence of August 14 and August 28, 1998. In addition, Dr. Soong has met with Dr. Osofsky and discussed the relationship between both programs. We are forwarding Dr. Osofsky our policies and procedures for admissions and discharges for Mental Health transfers. I am satisfied there is a mutual understanding of the various clinical issues as they relate to the two programs.*

*I have always felt that the issues involving the immediacy of transfers has been adequately addressed at ARDC (for example, they have never taken 10 days).*

*It should be noted that Dr. Osofsky inquired, during the meeting with Dr. Soong, about the possibility of having a transition Mental Health Unit at LSP for adjustment purposes. He also mentioned the possibility of having a chronic unit for low functioning inmates requiring group care. Please note that contrary to immediately following the CSU/IISU transfer (at that time they naturally wanted to return to LSP), we have concluded that recent Mental Health re-evaluation transfers of LSP inmates are being overtly manipulative so as not to return to LSP, specifically Camp J. They are doing this primarily through suicide gestures and attempts and are very open about it with clinical staff here. Dr. Osofsky also inquired about these inmates which are eventually determined to be Level of Care 2 not returning to LSP.*

Intensive Motivational Program of Alternative Correctional Treatment
I.M.P.A.C.T.

Adult Reception and Diagnostic Center
A.R.D.C.

P.O. Box 174 St. Gabriel, Louisiana, 70776    Phone (225) 319-4505    Fax (225) 319-4593
An Equal Opportunity Employer

*Mental Health Services*
*Page 2*

*Dr. Soong along with Dr. Thompson, who is the Director of the Forensic Neuropsychiatry Department at Tulane and the primary clinical consultant for both Feliciana Forensic Facility and the DPS&C/EHCC acute psychiatric and in-patient program, are very adamant about the level of services, including evaluation and discharges, that we provide for our patients as being at a higher level than most psychiatric hospitals.*

*I know you agree that the staff of EHCC has met the challenge we presented to them with the transfer of these programs in February, 1997 in an exceptional manner.*

*I submit this only for your information and further handling as you see fit.*

*C.M. Lensing*
*Warden*

*CML/aw*

**NEW OR EXPANDED SERVICE REQUEST**
DEPARTMENT NAME: Department of Corrections
AGENCY NAME:  Louisiana State Penitentiary

(9/98)
AFS AGY: 402
FISCAL YEAR 1999-2000

| AGENCY SUMMARY PRIORITY | NAME OF SERVICE | PROGRAM | MEANS OF FINANCING | | POSITIONS |
|---|---|---|---|---|---|
| | | | GENERAL FUND | TOTAL FUNDS | |
| 1 Medical Quality Assurance | Health Services | | $88,000 | $88,000 | 0 |
| 2 Mental Health | Health Services | | $184,786 | $184,786 | 4 |
| 3 Waste Disposal | Incarceration | | $265,258 | $265,258 | 0 |
| 4 Business Services | Administration | | $17,584 | $17,584 | 1 |
| 5 Quality Improvement Program | Health Services | | $170,012 | $170,012 | 5 |
| 6 ISIS Positions | Incarceration | | $51,660 | $51,660 | 3 |
| 7 Maintenance Staff | Incarceration | | $349,240 | $349,240 | 13 |
| 8 Information Services | Administration | | $58,436 | $58,436 | 2 |
| 9 Vocational School | Rehabilitation | | $131,536 | $131,536 | 2 |
| TOTALS | | | | | |

submitted to DOC HQ
9/30/98

**EXHIBIT**

3

AGENCY NAME: Louisiana State Penitentiary

PROGRAM: Mental Health, Health Services

TITLE:

AFS AGY- 402
FISCAL YEAR 1999-2000

| # | | EXISTING OPERATING BUDGET | REQUESTED INCREASE OPTION 1 | 2ND YEAR INCREASE OPTION 1 | 3RD YEAR INCREASE OPTION 1 | REQUESTED INCREASE OPTION 2 | 2ND YEAR INCREASE OPTION 2 | 3RD YEAR INCREASE OPTION 2 |
|---|---|---|---|---|---|---|---|---|
| | MEANS OF FINANCING: | | | | | | | |
| 1 | STATE GENERAL FUND (Direct) | 10,002,117 | 184,786 | 215,593 | 221,632 | | | |
| 2 | STATE GENERAL FUND BY: | | | | | | | |
| 3 | INTERAGENCY TRANSFERS | | | | | | | |
| 4 | FEES & SELF-GENERATED | | | | | | | |
| 5 | STATUTORY DEDICATIONS | | | | | | | |
| 6 | INTERIM EMERGENCY BOARD | | | | | | | |
| 7 | FEDERAL FUNDS | | | | | | | |
| 8 | TOTAL MEANS OF FINANCING | 10,002,117 | 184,786 | 215,593 | 221,632 | 0 | 0 | 0 |
| 9 | EXPENDITURES & REQUEST: | | | | | | | |
| | Salaries Regular | 9,105,270 | 104,828 | 130,634 | 135,667 | | | |
| 10 | Other Compensation | | | | | | | |
| 11 | Related Benefits | 923,804 | 20,166 | 25,167 | 26,173 | | | |
| 12 | TOTAL PERSONAL SERVICES | 7,029,074 | 124,994 | 155,801 | 161,840 | 0 | 0 | 0 |
| 13 | Travel | 2,559 | | | | | | |
| 14 | Operating Services | 286,679 | | | | | | |
| 15 | Supplies | 1,848,666 | | | | | | |
| 16 | TOTAL OPERATING EXPENSES | 2,137,904 | | | | | | |
| 17 | PROFESSIONAL SERVICES | 733,639 | 59,792 | 59,792 | 59,792 | 0 | 0 | 0 |
| 18 | Other Charges | | | | | | | |
| 19 | Debt Service | | | | | | | |
| 20 | Interagency Transfers | | | | | | | |
| 21 | TOTAL OTHER CHARGES | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 22 | Acquisitions | 101,500 | | | | | | |
| 23 | Major Repairs | | | | | | | |
| 24 | TOTAL ACQ. & MAJOR REPAIRS | 101,500 | 0 | 0 | 0 | 0 | 0 | 0 |
| 25 | UNALLOTTED | | | | | | | |
| 26 | TOTAL EXPENDITURES & REQUEST | 10,002,117 | 184,786 | 215,593 | 221,632 | 0 | 0 | 0 |
| 27 | EXCESS (OR DEFICIENCY) OF | | | | | | | |
| 28 | FINANCING OVER EXPENDITURES | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 29 | AUTHORIZED FULL-TIME EQUIVALENTS | | | | | | | |
| 30 | Classified | 139 | | | | | | |
| 31 | Unclassified | 15 | | | | | | |
| 32 | TOTAL POSITIONS (Salaries Regular) | 154 | | | | | | |
| 33 | POSITIONS (Other Charges) | | | | | | | |

DEPARTMENT NAME: Public Safety & Corrections
AGENCY NAME: Louisiana State Penitentiary
PROGRAM: Health Services
TITLE: Mental Health

AFS AGY: 402
FISCAL YEAR 1999-2000

1  Explain need for proposed new or expanded service, including how it will fulfill the program's mission, who will be the principal users, and who will primarily benefit from the service.
2  Louisiana State Penitentiary has a long history of providing evaluation, treatment, and programmatic interventions for its considerable number of maximum security inmates with mental illness.  In recent
3  year, the DOC relocated the department's mental health in-patient unit to HCC.  Associated funding and positions were transferred as well.  On a national basis, it is estimated that 10% to 15% of inmates
4  have severe mental illness which requires ongoing treatment.  Inmates in a maximum security prison may, over time, display more mental problems related to the length and specific components of their
5  incarceration.  Currently, outpatient programs of mental health clinics in the general population at LSP are being provided, but need some expansion.  Such programs will upgrade standards and
6  above inmates to receive more appropriate treatment and will result in fewer decompensations and shorter and more economical stabilization processes.
7
8
9  How will the proposed new or expanded service affect performance?
10  If the proposed service affects an existing strategic or operational objective(s), list the objective(s) as it is currently written here:
11  Strategic (Long range):
12  Operational (1-Year):
13  The above objective is not directly affected by the proposal, however there is an impact on a related indicator.  (see below)
14
15
16  List a revised version of the objective(s) here, based on the proposed service:
17  Strategic (Long range):
18  Operational (1-Year):
19
20
21  If no objective currently exists to measure the effect of the proposed service, write a new objective here:  (The objective describes the exact results sought.  It must be specific, measurable,
22  attainable, outcome-oriented and time bound.)
23  Strategic (Long range):
24  Operational (1-Year):
25
26
27  Explain the strategies to be used to accomplish the proposed service's objective.  Use continuation sheet if necessary.
28
29
30
31
32
34

| PERFORMANCE INDICATORS | PRIOR YEAR ACTUAL | EXISTING OPERATING BUDGET | 1st YEAR OPERATIONAL OPTION 1 | 1st YEAR OPERATIONAL OPTION 2 |
|---|---|---|---|---|
| 35 | | | | |
| 36 | | | | |
| 37  Input: | | | | |
| 38  Output:  % of Total Institutional Budget that is Health Services | 12.77 | 12.77 | 12.99 | |
| 39  Outcome: | | | | |
| 40  Efficiency: | | | | |
| 41  Quality: | | | | |

DEPARTMENT NAME: Public Safety & Corrections  
AGENCY NAME: Louisiana State Penitentiary  
PROGRAM: Health Services  
TITLE: Mental Health

(9/98)  
AFS AGY: 402  
FISCAL YEAR 1999-2000

1 Explain the funds requested for each line item by object. Identify specific new positions requested. Use continuation sheet if necessary.

| # | Title | | | Amount | Explanation |
|---|---|---|---|---|---|
| 2 | | | | | |
| 3 | Correction Clinical Social Worker 1 | (2) | 2100 | 28,708 | An increase in Mental Health Team outpatient workload has resulted from the transfer of the CSU to HCC. The number |
| 4 | | | 2300 | 3,589 | of active cases MHU has been following has increased 54% since 1996. Also, the hospice program started 01/01/98. |
| 5 | | | 2360 | 416 | Social workers would provide direct mental health care; coordinate program services; on going psycho-social |
| 6 | | | 2380 | 1,337 | assessments; educate staff and volunteers; coordinate policy and daily operations of hospice program. |
| 7 | | | | | |
| 8 | RN House Supervisor | (1) | 2100 | 39,580 | This position with specific credential criteria in psychiatric nursing background is essential to this program. |
| 9 | | | 2300 | 4,948 | This nurse will be assigned to the Mental Health Program and will provide psychiatric nursing service to those |
| 10 | | | 2360 | 574 | inmates who will require such services. |
| 11 | | | 2380 | 2,194 | |
| 12 | | | | | |
| 13 | Psychologist 2 | (1) | 2100 | 36,540 | A full-time psychologist is needed to evaluate patients and determine the psychiatric diagnosis through specialized |
| 14 | | | 2300 | 4,568 | testing and clinical interview. An established diagnosis is necessary in court to support treatment practices |
| 15 | | | 2360 | 530 | at LSP during litigation. These services are currently provided on a part time basis through a professional |
| 16 | | | 2380 | 2,010 | services contract. |
| 17 | | | | | |
| 18 | Contract LSU  Dept. of Psychiatry | | | 59,762 | To provide contractual services by LSU to provide system assessment consultations and recommendations |
| 19 | | | | | to LSP.  Provide ongoing support for program development and quality assurance monitoring.  The LSU |
| 20 | | | | | Department of Psychiatry will provide the services of one professional staff member a minimum of 5 days |
| 21 | | | | | per month, to be billed at $4800/month plus travel. |
| 22 | | | | | |
| 23 | | | | | |
| 24 | | | | | |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | | | | | |
| 32 | | | | | |
| 33 | | | | | |
| 34 | | | | | |
| 35 | | | | | |
| 36 | | | | | |

**Request for**
**Certificate of Eligibles**
SF 2 (9/95)

STATE OF LOUISIANA
**DEPARTMENT OF STATE CIVIL SERVICE**

Please issue a certificate of eligibles to the agency below, in accordance with the provisions of the Civil Service Rules, to fill vacant positions under the following terms and conditions:

| FOR CIVIL SERVICE USE ONLY – SF-2 TRACKIN |
|---|

Org ID: _____ Req #. _____

**Date        Action**

_____ 01 - To Certification Supervisor

_____ 02 - To Assessment Units

_____ 04 - To Certification Pending Announcement

_____ 06 - To Certification for certificate issue

_____ 07 - Certificate issued _____

_____ 08 - Request canceled

_____ 09 - Returned to agency for correction

Cer initials: _____ Notes: _____

To:

State of Louisiana
**DEPARTMENT OF STATE CIVIL SERVICE**
P. O. BOX 94111, Capitol Station
Baton Rouge, LA 70804-9111

DATE: **8/27/98**

ORGANIZATION ID. **080140200**

REQUISITION NO. (6 digits) **97-0061**

JOB CODE AND JOB TITLE
**150430        Corr. Clin. Social Wrk Entry**

| GS LEVEL **14** | MINIMUM **$2253** | MAXIMUM **$2765** |
|---|---|---|

NUMBER OF VACANCIES

LOCATION(S) OF VACANCIES (City & Parish)

**Angola, La.          West Feliciana**

LAPPS POSITION CONTROL NUMBER(S):

FORMER INCUMBENT(S)
**New Position**

APPOINTMENT
TYPE:
☐ Probational
☑ Job, not to exceed __12__ months
☐ Promotion

If Promotion, Promotional Zone requested. _____

Do you need mailing labels?   ☒   N

**Existing Register Information**

Series/Card: _____ No existing register:

_____ CTS _____ ANN* _____ STE*
_____ PET _____ GCE _____ Other*

Number of names on Existing Register: _____

**Announcement Information**

Special # _____ Promo # _____

A.U. Consultant: _____

SPECIAL REQUIREMENTS AND JUSTIFICATION

Organization ID, Contact Person, Mailing Address & Phone Number

080140200
Karen Durrett
Louisiana State Penitentiary
Angola, La  70712

Requesting Officer

John Debataz

Signature of Requesting Officer
*John Debataz*

Title of Requesting Officer
Human Resource Director

**EXHIBIT**
**4**

**AGENCY COPY**

# Louisiana State Penitentiary

**Burl Cain**
*Warden*

M. J. "Mike" Foster, Jr.
Governor

Richard L. Stalder
Secretary

October 15, 1998

TO:                Richard L. Peabody
                   Deputy Warden/Security and Treatment Services

FROM:              Burl Cain, Warden

RE:                Mental Health Services

Dr. Howard Osofsky and Dr. Wayne Greenleaf have recommended that LSP further develop transition and extended care programs (refer to Dr. Osofsky's letter of August 28, 1998).  Please work with security and Mental Health staff to formally develop and implement these special programs.  Any plan must be approved by Doctors Osofsky and Greenleaf.

The consultant doctors have indicated that these plans/programs can be accomplished with minimal expense. We have requested, through the FY 99/2000 budget process, two additional social worker positions, a registered nurse, as well as a full time psychologist (in addition to the 10 contract hours per week).  We have requested a job appointment register to fill the two social worker positions as soon as possible.

As we currently have on staff a cadre of officers who worked at the Clinical Services Unit who have received mental health training, you should incorporate those officers into the plan.  Attached is a listing of those officers who worked at the CSU in February, 1997 and their current work location.

Please submit a draft proposal to my office by Friday, October 30, 1998.

Burl Cain
Warden

BC:sm

attachment

cc:    Warden McFatter
       Warden Ranatza
       Clay Williams
       Dr. Howard Osofsky

**EXHIBIT**
**5**

The below listed employess were working at the CSU unit at the time of transfer of that unit to HCC (Febaruay, 1997).

| Name | Current Assignment |
|---|---|
| Colan Allred | Resigned |
| Darren Bordelon | Major/Reception Center |
| Presley Bordelon | Lt./Main Prison B Team |
| Daron Brown | Lt./Death Row/CCR A Team |
| Elyse Bynum | Death Row/CCR Bb Team |
| Marcus Callahan | Lt./Death Row/CCR B Team |
| Elvin Comena | Main Prison B Team |
| Alan Davis | Resigned |
| Edith Day | Death Row/CCR A Team |
| Dale Duplechain | Death Row/CCR A Team |
| Otis Dyer | Resigned |
| Alexander Flanagan | REBTC A Team |
| Alvin Foselman | Camp F A Team |
| Melvin Groom | Reception Center A Team |
| Jerry Hamilton, Sr. | Death Row/CCR B Team |
| Joe Hamilton | Resigned |
| Lionel Harris, Sr. | Death Row/CCR B Team |
| William Higgs | Death Row/CCR B Team |
| John Jacobs | Reception Center A Team |
| Floyd Laprairie | Death Row/CCR A Team |
| Gary London | Death Row/CCR B Team |
| Diane Moreau | Death Row/CCR B Team |
| Thomas Normand | Death Row/CCR B Team |
| Josoeph Ortego | Resigned |
| John Ryan | Reception Center A Team |
| Allen Schexnayder | Death Row/CCR A Team |
| Glen Shelton | Resigned |
| Carmen Shipley | Transferred to non-security |
| Joseph Sims | Death Row/CCR B Team |
| Carl Smith | REBTC B Team |
| Diana Smith | Death Row/CCR B Team |
| Donnell Sullivan | Death Row/CCR A Team |
| Jamie Thompson | Resigned |
| Bonnie Voorhies | Laundry |
| Larry Angeron | Resigned |
| Lonnie Brumfield | Resigned |
| William Cavin | Resigned |
| John Couvillion | Death Row/CCR D Team |
| Wilbur Crum | Lt./Death Row/CCR D Team |
| Allen Dauzat | Death Row/CCR A Team |
| Shellon Duncan | Death Row/CCR C Team |
| Tom Evans, Jr. | Death Row/CCR C Team |
| Wayne Gremillion | Lt./Death Row/CCR C Team |
| Donovan Guillory | REBTC A Team |
| Kenneth Harvey | Death Row/CCR A Team |
| Leroy Henderson | Death Row/CCR D Team |
| Albert Jones | Reception Center D Team |
| Annaleah Miller | Resigned |
| Robert Oswald | Death Row/CCR D Team |

| | |
|---|---|
| Sheila Ramsey | Reception Center B Team |
| Bryan Ready | Reception Center C Team |
| Harold Robinson | Death Row/CCr D Team |
| William Smedley | Reception Center C Team |
| Ellis Taylor | Resigned |
| Jason Turner | Resigned |
| Ezell Vantree | Reception Center D Team |
| Wilson Young | Resigned |

# Louisiana State Penitentiary

**M. J. "Mike" Foster, Jr.**
Governor

October 15, 1998

**Burl Cain**
Warden

**Richard L. Stalder**
Secretary

TO:        Will Paulson
           Information Services

FROM:      Sheryl M. Ranatza
           Deputy Warden

RE:        Medical Automation System
           Mental Health Component


Dr. Howard Osofsky and Dr. Wayne Greenleaf have reviewed the mental health component of the medical automation system. They believe it is an ipressive system; however, there are some subsystems which would further enhance the system. As you and I have discussed, there is a great need for extraction of data for statitiscal reports for management. I spoke with Dr. Greenleaf today and he has agreed to assist with data elements. Please make arrangements to meet with Dr. Greenleaf during his visit to LSP next week to discuss system enhancements. After that meeting, please submit a report outlining strategy for development and implementation.


SMR

cc:    Warden Peabody
       Warden McFatter


EXHIBIT

6

"An Equal Opportunity Employer"
Telephone (504) 655-4411 FAX (504) 655-2319
Louisiana State Penitentiary – Angola, Louisiana 70712-9813